# United States District Court
## Western District of Virginia
### Harrisonburg Division

| | | |
|---|---|---|
| **MARIA W. DARCUS**, | ) | Civil No.: 5:10cv00078 |
| *Plaintiff*, | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: Hon. James G. Welsh |
| *Defendant*, | ) | U. S. Magistrate Judge |

Maria W. Darcus brings this action challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her current application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

She had filed an earlier application on July 20, 2005 alleging a disability onset date of April 2, 2004. This initial application was subsequently denied by written decision of an administrative law judge ("ALJ") on February 22, 2007. Her request for Appeals Council review was also denied, and she undertook no further appeal. During the pendency of her first application's administrative appeal process, the plaintiff filed her current Title II application on April 2, 2007. Therein, she alleges a disability onset date of February 23, 2007 (one day after the date of the adverse ALJ's decision on her initial application) due to migraines, degenerative

cervical disc disease, cervical and thoracic myofascial pain, hypertension, and high cholesterol. (R.16,86-103,189,196).

Her current application was also rejected at all levels of the administrative process, including by written ALJ decision dated September 20, 2009 (R.16-38,107-108), and with the Appeals Council's denied of her review request (R.1-5), the ALJ's decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Along with his answer to the plaintiff's complaint, the Commissioner has filed a certified copy of the Administrative Record ("R."), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on December 28, 2010 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment; each has filed a supporting memorandum of points and authorities, and no request was made for oral argument. [1]

I.   **Summary Recommendation**

Based on a thorough review of the administrative record and for the reasons that herein address each of the plaintiff's several allegations of decisional error, it is recommended that the

---

[1] WDVa Gen. R. 4(c)(2) direct that a plaintiff's request for oral argument in a Social Security case must be made in writing at the time his or her brief is filed.

plaintiff's motion for summary judgment be denied and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

## II. Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. (*quoting Craig v. Chater*, 76 F.3$^d$ at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2$^d$ 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## III. Evidence Summary

3

On February 22, 2007, the date her initial DIB application was denied by ALJ decision, and equally on the following day (the date she alleges she became disabled in her current application) the plaintiff was forty-seven years of age. (R.169). She had a high school education; she had not worked since June 2004, and her past relevant work included jobs as an assembler, warehouse worker, and cleaner. (R.80,88,91,194,219).

Relevant to her current application, the plaintiff's medical records show that she was seen and treated by D. Preston Grice, M.D. (Augusta Pain Management Center), for neck, shoulder and arm pain. (R.331-333,336-360,387-390,375-380). At the time he saw her in December 2006, Dr. Grice found the plaintiff to continue to exhibit full muscle strength in all upper extremities, to have fully intact sensation and to exhibit no upper extremity swelling or edema. (R.331). He also noted that the plaintiff had undergone extensive evaluation in the past, but no identifiable source of her pain complaints had been found. (*Id*.) In addition to these earlier findings (R.336-347,355), Dr. Grice's treatment records document no significant change in her condition during the ensuing year (R.332-333,348-349,375-376,387-390,821-822).

Multiple 24-hour heart monitoring studies, multiple radiographic studies, multiple MRI spinal studies, a bone density study, an electrocardiogram, several emergency room visits, and divers clinical evaluations by endocrinologists, neurologists, rheumatologists, nephrologists, cardiovascular surgeons, and orthopedists between April 3, 2007 and March 2009 also fail to disclose objective medical finding sufficient to demonstrate an organic or other objective medical basis for the plaintiff's claims of a disabling condition due heart palpitations, a heart arrhythmia, hypertension, kidney disease, hyperthyroidism, insomnia, unspecified hormonal

4

issues, fatigue, upper extremity weakness, or for persistent diffuse muscle and joint pain, including aches and pains in her head, back, neck, shoulder, arm, elbow, wrist, abdomen, and feet.   (R.357-360,364-366,381-385,397-401,479-486,614,615-618,619-625,627-628,630-642, 644-645,650-655,659-661,671-676,677-678,686-710,825-826).

Similarly, the plaintiff's primary care records from Skyline Internal Medicine, variously dated between September 2007 and March 2009 consistently record the absence of clinical evidence of neck stiffness or extremity abnormality; they indicate that her gait and posture were normal; they contain no indication of any medically significant range-of-motion abnormality, and they show that her "depression," "fibromyalgia," and "myofascial pain" responded appropriately to a medication regime. (R.414,418-419,421-422,424-425,427-428,433-451,493, 502-573,575-576,578-579,625,689-690,823-826).

Consistent with this medical record in June 2007 and again in December 2007 state agency medical reviewers separately concluded that the plaintiff retained the functional ability to perform a full range of light work. [2]  (R.667-372,494-500).  Those opinions are also consistent with the results of a later orthopedic examination by Dr. Matthew Pollard, a cervical and lumbar spine surgeon.  Based on his March 2009 comprehensive orthopedic evaluation and the results of contemporaneous MRI studies, Dr. Pollard found "no acute findings;" he found the plaintiff to

---

[2]  "*Light work* involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a person] must have the ability to do substantially all of these activities. If someone can do light work, [the agency determines] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b)

exhibit an erect posture, a normal gait without difficulty, a full range of shoulder and upper extremity motion, a full range of hip and lower extremity motion, no spinal instability, and no obvious nerve compression. (R.615-616'8254-826).

## IV. Analysis

Utilizing the agency's five-step process [3] to evaluate the plaintiff's DIB claim, the ALJ concluded that the plaintiff's discogenic (degenerative) back disorder, neck and arm pain, and marginal obesity were *severe* [4] impairments; he next determined that none of these conditions, either individually and in combination, was of listing-level severity; and based on his review of the entire record, including the functional assessments made by the state agency reviewers, the ALJ concluded that the plaintiff retained the functional ability to perform her past relevant work as an assembler. (R.18-38).

Contending that ALJ's decision was not based on substantial evidence, the plaintiff assigns error to the ALJ's failure to give controlling decisional weight to the treating source

---

[3] This process requires the ALJ to consider whether a claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. *See* 20 C.F.R. § 404.1520. If the ALJ finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2011). Under this analysis, a claimant has the initial burden of showing that he or she is unable to return to any past relevant work because of his or her impairments. Once the claimant establishes such a *prima facie* case of disability, the burden shifts to the agency to then establish that the claimant has the residual functional capacity, considering the his or her age, education, work experience and impairments,to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A); *McLain v. Schweiker*, 715 F.2$^d$ 866, 868-869 (4th Cir. 1983); *Hall v. Harris*, 658 F.2$^d$ 260, 264-265 (4th Cir. 1981); *Wilson v. Califano*, 617 F.2$^d$ 1050, 1053 (4th Cir. 1980).

[4] Quoting *Brady v. Heckler*, 724 F.2$^d$914, 920 (11$^{th}$Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4$^{th}$Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c).

6

Case 5:10-cv-00078-MFU-JGW   Document 19   Filed 12/16/11   Page 6 of 14   Pageid#: 993

opinions of Drs. Snodgrass and Craddock, to his credibility assessment of her pain-related testimony, to his step-four finding that she retained the ability to perform her past relevant work as an assembler, and his consideration of her earlier unsuccessful DIB pursuant to the principle of *res judicata*. After a careful review of the entire record, each of these contentions is without merit.

### A.

Without question, as the plaintiff contends, both Dr. Shelley Snodgrass (her primary care physician) and Dr. George Craddock (an examining cardiovascular surgeon) are treating sources.[5] Having begun to treat the plaintiff in April 2007 for several medical issues, including complaints of long-standing chronic pain, the plaintiff is also correct in noting that Dr. Snodgrass had a "better longitudinal view" of her impairments than the state agency medical reviewers. (*See* R.421-422,424-425.427-428). However, as the ALJ's decision outlines in considerable detail, Dr. Snodgrass' statements in August and November 2007 to the effect that the plaintiff was "significantly disabled" [6] due to a "myofascial pain syndrome involving her neck, back and left shoulder" is neither if well-supported by medically acceptable clinical and laboratory diagnostic techniques nor is it consistent with the other substantial evidence in the record. (R.26-27; *see* R.414,493,689,690; *see also* R.686-687). *See* 20 C.F.R. § 404.1527(a). Dr. Craddock's

---

[5] A "treating source" means an individual's own physician, psychologist, or other acceptable medical source who provides, or has provided, the individual with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the individual. 20 C.F.R. § 404.1502

[6] A conclusory statement by a medical source that an individual is disabled is an opinion addressing the ultimate issue and is one reserved to the Commissioner. 20 C.F.R. § 404.1527(e).

7

December 2007 opinion that she was "disabled"[7] due to "depression and myofascial syndrome" is similarly deficient. (R.27,677-678.)

To be afforded controlling weight, as the plaintiff contends, these treating source conclusions must be well-supported by objective medical evidence. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting 20 C.F.R. § 404.1527(d)(2)). In the instant case the record is devoid of any supporting psychiatric evaluation or specialized treatment of the plaintiff's complaints of depression. Similarly, the record demonstrates no supporting rheumatologic evaluation; instead, it documents only conservative treatment for her chronic pain complaints and no suggestion of any medically imposed physical restrictions. It contains no clinical testing or functional capacity assessment of the plaintiff's functional limitations to support either Dr. Craddock's or Dr. Snodgrass' conclusion. Moreover, as the ALJ specifically noted in his decision, neither Dr. Craddock nor Dr. Snodgrass (as opposed to those of the state agency medical reviewers) provided either a specific factual reason for their opinions about the plaintiff's residual functional capacity or any reference to any supportive evidence in the medical record. (R.24,32,36-37; *see* R.372, 499). Therefore, the ALJ appropriately concluded that these opinions conflicted with the plaintiff's treatment record, were largely based on the plaintiff's subjective complaints, and should not be accorded controlling decisional weight. (R.37). *See* 20 C.F.R. § 404.1527.

**B.**

---

7  *See* preceding footnote.

Equally lacking in merit is the claim that the ALJ improperly found the plaintiff's statements concerning the intensity, persistence and limiting effects of her medical condition to be exaggerated and not to be fully credible. In making this finding, the ALJ disputes neither the fact that the plaintiff has an impairment that could cause pain nor the fact that she suffers from pain. (R. 33-34). As the Fourth Circuit's decision in *Craig v. Chater*, 76 F.3$^d$ 585, 594-595 (1986) directs, however, in determining whether an individual's subjective pain-related testimony is sufficient to support a disability finding, the ALJ must apply a two-step process. First, he must determine whether there is objective medical evidence to establish the existence of a condition that could be reasonably expected to produce pain, and second, he must evaluate the manner in which the intensity and persistence impacts the individual's ability to work.

In other words, neither whether the plaintiff in fact has pain nor whether her pain-related testimony alone in this case could be an adequate evidentiary basis for a disability finding are determinative questions in the context of this case. Rather the question is whether her pain credibly causes functional limitations that render her unable to work. *See Gross v. Heckler*, 785 F.2$^d$ 1163, 1166 (4th Cir. 1986) ("[p]ain is not disabling *per se*").

Consistent with this applicable agency guideline, the ALJ in the present case considered not only the plaintiff's statements about her pain and its impact on her ability to work, but he also considered all of the available evidence, including *inter alia* the unremarkable clinical and laboratory findings, her conservative treatment regime, and the scope of her daily activities. (R.15,33,36-37; S*ee* R.205-206,209,331-332,366,389,510,514,553,563,565,568-569,650-655, 686). *See* 20 C.F.R. § 404.1529(c).

9

On review, therefore, it is clear the ALJ's finding that the plaintiff's pain-related testimony was exaggerated and inconsistent with the record as a whole followed applicable law and is supported by substantial evidence. Moreover, the ALJ "had the opportunity to observe the demeanor and to determine the credibility . . . , [and his] observations concerning [credibility] are to be given great weight" *Shively v. Heckler*, 739 F.2$^d$ 987, 989 (4th Cir. 1984).

## C.

Despite her testimony at the hearing that her past work as an assembler "was easy" (R.50), she contends on appeal that the ALJ erred in making the step-four finding that she retained the residual functional ability to perform this past relevant work. Moreover, she makes this argument without reference to any limitation which would prevent her from performing the physical demands of this work. *Shinseki v. Sanders*, 556 U.S. 396, ___ (2009) (a party seeking reversal normally must explain why the alleged error caused him or her harm).

Therefore, it is assumed *arguendo* that this argument is based on certain testimony given by the vocational witness in response to certain hypothetical questions predicated on the plaintiff's testimony concerning her debilitating level of pain, the fact that it "never goes away," her inability to "to pick that much up with [her] left arm," and the incapacitating nature of the multi-day migraine headaches she has each month. (*See* R. 49-50,57-58,63-65,72-7477-78). This argument, however, ignores completely the response of the vocational witness to the ALJ's first hypothetical question.

10

Consistent with the record, the ALJ posited a question to the vocational witness based on an assumed individual with the plaintiff's vocational profile, limited to light work with a sit/stand option, limited to occasional use of her left (non-dominant) arm to lift and carry, and with an inability to do any repetitive bending or twisting or climbing. (R.80-81). Asked whether such an individual could perform any of the plaintiff's past relevant work, the vocational witness said that such an individual could work as an assembler, a job the plaintiff had previously performed. (R.81). On that basis alone, the ALJ's step-four finding is manifestly supported by substantial evidence.

### D.

Lastly, the plaintiff contends on appeal that the ALJ erroneously applied the doctrine of administrative *res judicata* in this case, because her current claim presents a "completely new diagnosis" of fibromyalgia [8] and a "'significant' change" in her condition making the doctrine inapposite. At its core, this argument reflects the plaintiff's basic failure to recognize that "[t]he primary symptom of fibromyalgia . . . is pain." *Johnson v. Astrue* 597 F.3$^d$ 409, 414 (1st Cir. 2009). It reflects a failure to appreciate the condition's unexplained and uncertain cause. *Id*. Moreover, it reflects a failure to recognize that the diffuse subjective symptoms equated with a diagnosis of fibromyalgia are the same subjective symptoms of diffuse, "chronic," and "unbearable pain" considered by the ALJ in connection with the plaintiff's earlier application. (*See* R. 91-101).

---

[8] Fibromyalgia is defined as "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause. The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites." *Laxton v Astrue* 2010 U.S. Dist. LEXIS 21338 *14 (EDTn 2010) (quoting Stedman's Medical Dictionary as cited in *Willoughby v. Comm'r of Soc. Sec.*, 332 F. Supp. 2$^d$ 542, 546 (W.D.N.Y. 2004)); *accord Doe v Sec'y, HHS*, 2010 U.S. Claims LEXIS 401, *2

11

In summary, the record fails to demonstrate that either the plaintiff's medical condition or her functional abilities materially changed after her earlier DIB application was denied by administrative decision dated February 22, 2007. Appropriately, in the instant case, therefore, the ALJ began his analysis of the plaintiff's current claim by recognizing the fact that her prior adverse DIB determination was dated only one day prior to the dates she alleges in her current application that her disability began. *See Albright v. Commissioner*, 174 $3^d$ 473, 477 (4th Cir. 1999). Consequently, on the basis of that prior decision alone, it "very likely" the plaintiff's medical condition was unchanged one day later and that her ability to perform in the work place remained undiminished. *Id.*; *see also* Acquiescence Ruling 00-1(4). Contrary to the plaintiff's argument, the ALJ quite correctly noted in his decision that the doctrine of *res judicata* was applicable through the date of the earlier decision, and for any change to be made in any essential finding in that earlier decision "the party seeking the change must produce evidence sufficient to warrant the change." (R. 16-17).

## V.     Proposed Findings

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. In all material respects the Commissioner's final decision is rational and supported by substantial evidence;

2. The ALJ properly evaluated the opinion evidence of Dr. Craddock;

3. The ALJ properly evaluated the opinion evidence of Dr. Snodgrass;

12

4. The ALJ's determination that plaintiff's testimony was not entirely credible is supported by substantial evidence;

5. The ALJ's step-four finding is supported by substantial evidence;

6. The ALJ properly applied the doctrine of *res judicata*;

7. All facets of the Commissioner's final decision should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the

conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED:  16th day of December 2011.

    /s/   *James G. Welsh*
United States Magistrate Judge